Filed 8/14/26  Szewczyk v. Orange County Employees Retirement System CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT SZEWCZYK et al., | |
| Plaintiffs and Respondents, | G065386 |
| v. | (Super. Ct. No. 30-2022-01268984) |
| ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Sandy N. Leal, Judge. Affirmed.

Reed Smith, Maytak Chin and Mariah K. Fairley for Defendants and Appellants.

Rains Lucia Stern St. Phalle & Silver and Jacob A. Kalinski for Plaintiffs and Respondents.

Pursuant to the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.) (CERL), a County of Orange (County) employee

receives a pension amount based in part on the employee's "'[c]ompensation earnable'" (§ 31461, subd. (a).).[1] "'Compensation earnable'" is defined as "the average compensation . . . for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay." (*Ibid.*)

Following a reorganization of the Orange County Sheriff's Department in 2008, those classified in the position of deputy sheriff II were assigned to work patrol while those classified as a deputy sheriff I worked in jail operations. Deputy sheriff II's Robert Szewczyk and Rodney Morikawa, along with other deputy sheriff II's who had been working in jail operations at the time of the reorganization, accepted the option to remain working in jail operations. All deputy sheriffs working in jail operations, exclusively, were required to work a so-called "platoon schedule" by which they worked a regular, mandatory schedule of 80.5 hours every two weeks; a half-hour of overtime coded as "6FE" overtime was built into this regular work schedule.[2]

After they retired in 2018, Szewczyk and Morikawa petitioned the trial court for a writ of administrative mandamus and a writ of traditional mandamus compelling the Orange County Employees Retirement System (OCERS) and the OCERS Board of Retirement (the Board) (collectively, the OCERS parties) to include 6FE overtime pay as

_____

[1] All further statutory references are to the Government Code unless otherwise specified.

[2] The "6" in 6FE overtime represents planned overtime, the "F" character represents overtime in the "'other'" category because this type of overtime does not fall into any other category, and the final character "E" represents the deputy sheriff classification code of the employee working the overtime.

2

"'compensation earnable'" in determining their final compensation and pension benefit. The court granted the petitions and the OCERS parties appealed.

We affirm. For the reasons we explain, 6FE overtime pay constituted compensation earned by persons in Szewczyk and Morikawa's same grade or class of positions during the relevant time period, and at the same rate of pay, and therefore must be included in their compensation earnable calculation under section 31461, subdivision (a).

FACTS AND PROCEDURAL HISTORY

I.

SZEWCZYK AND MORIKAWA APPLY FOR SERVICE RETIREMENT AND REQUEST 6FE OVERTIME PAY BE INCLUDED IN COMPENSATION EARNABLE

In February 2018, Szewczyk and Morikawa each filed an application for service retirement with OCERS. In March 2018, they each requested OCERS approve and include in their compensation earnable, inter alia, the "[half-hour of] overtime (code 6FE) deputies [were] paid each and every pay period" as "[t]his overtime applie[d] to all deputies in corrections assigned the 12-hour work schedule."[3]

In June 2019, OCERS denied Szewczyk's and Morikawa's requests. OCERS Director of Member Services, Heidi Halbur, sent substantively identical letters dated June 11, 2019, to Szewczyk and Morikawa, explaining the basis for the denial as follows: "[T]he 6FE overtime you received while working at correctional facilities assigned to the 12-hour work schedule is not compensation earnable and was properly excluded from

_____

[3] For ease of reading, in this opinion, we have omitted some formatting (such as capitalization and underscoring) from quoted material found in the briefs, trial court record, and administrative record.

3

your final average salary because it is not overtime required to be worked that is ordinarily worked by others in your same grade/class/rate of pay." She further explained: "Your job class at the time of your retirement was deputy sheriff II. The vast majority of deputy sheriff II's work in assignments other than corrections and therefore are not required to work this additional [half-hour] of 6FE overtime. [¶] This situation is governed by the case *Stevenson* [*v. Board of Retirement of Orange County Employees Retirement System*] (2010) 186 Cal.App.4th 498, where the court rejected the argument that [the plaintiff], an [Orange County Sheriff's Department] investigator, should be classified as a 'narcotics investigator' because his assignment necessitated more overtime than investigators with other assignments. Rather, the Court of Appeal[] looked to the County's official job description and class characteristics of Investigator to conclude that narcotics investigators did not constitute their own grade or class within the meaning of the CERL. Instead, there were only five 'classes' of positions [deputy sheriff I, deputy sheriff II, deputy sheriff trainee, investigator, and investigator-polygraph operator]. The court specifically concluded that the law does not require looking for the smallest unit of workers who have the most in common as to duties, responsibilities or schedules."

Halbur further stated: "In reaching my conclusion, I have followed the direction set out by the court in *Stevenson* to look to the official actions of the County defining the various classes characteristics[4].

---

[4] Halbert's letter contained the following footnote: "For deputy [sheriff] II, the job duties are, 'to patrol an assigned area and enforce law and order; to perform the more difficult and responsible work in guarding and directing prisoners in a county jail; to act as training or range officer; to transport and guard prisoners; to perform traffic law enforcement and accident investigation functions; and to do other work as required.' The class

Corrections duties are just one of a wide range of roles to which a Deputy Sheriff II can be assigned. As such, the 6FE overtime is not 'ordinarily worked by persons in the same grade or class' as you. Rather, it is limited only to those in the deputy sheriff II grade assigned to . . . County corrections facilities that utilize the 12-hour work schedule requiring the [half-hour] of overtime in each pay period."

She concluded her letter by advising: "If you disagree with the above determination, you have the right to petition for review by requesting an administrative hearing."

II.

### FOLLOWING AN ADMINISTRATIVE HEARING, THE BOARD REJECTS THE HEARING OFFICER'S PROPOSED FINDINGS AND CONCLUSION 6FE OVERTIME COMPENSATION SHOULD BE INCLUDED IN COMPENSATION EARNABLE

Szewczyk and Morikawa each timely filed a request for an administrative hearing. During the three-day administrative hearing held in April 2021, the hearing officer was presented with the administrative record, additional documentary evidence proffered by the parties, and live witness testimony.

On November 9, 2021, the hearing officer issued his proposed findings of fact, conclusions of law, and recommendation that Szewczyk's and Morikawa's appeals be granted, the 6FE overtime compensation at issue be regarded as compensation earnable for purposes of calculating their

---

characteristics distinguishing deputy sheriff II from deputy sheriff I are the assignment of more difficult, responsible and varied duties which require law enforcement knowledge and experience and greater exercise of independent judgement and initiative." Contrary to the statement in Halbert's footnote, the record shows that following the 2008 reorganization of the Orange County Sheriff's Department, the roles of deputy sheriff I and deputy sheriff II in jail operations were indistinguishable from each other.

retirement benefits, and their final calculation allowances be adjusted retroactively to their respective retirement dates.

OCERS filed objections to the hearing officer's proposed findings of fact, conclusions of law, and recommendation. The Board approved the OCERS's staff recommendation to exercise its authority pursuant to section 31534, subdivision (d) and (1) set the matter for hearing, (2) accept the record before the hearing officer plus any additional evidence and briefing offered by the parties, and (3) after consideration of testimony, evidence, briefing, and argument at a future meeting of the Board, decide the matter itself as if it had not been referred to the hearing officer.

In April 2022, the Board held a hearing pursuant to section 31534, after which it declined to adopt the hearing officer's proposed recommendation and instead affirmed OCERS's staff calculations excluding 6FE overtime pay from Szewczyk's and Morikawa's compensation earnable. The Board explained the 6FE overtime pay was properly excluded for the following reasons: "(1) The law excludes from compensation earnable pay for services rendered outside normal working hours; [¶] (2) The services rendered by [Szewczyk and Morikawa] during the half hour in question were not rendered during normal working hours because the half hour was not ordinarily worked by all persons in the deputy sheriff II grade/class/rate of pay during the period in question; and [¶] (3) [Szewczyk and Morikawa's] grade/class/rate of pay is that of deputy sheriff II, not a hybrid of two different County classifications."

6

## III.

### THE TRIAL COURT GRANTS SZEWCZYK AND MORIKAWA'S VERIFIED PETITION FOR WRIT OF ADMINISTRATIVE MANDAMUS AND PETITION FOR TRADITIONAL MANDAMUS

Szewczyk and Morikawa filed a verified petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 and a petition for traditional mandamus pursuant to Code of Civil Procedure section 1085. They requested the trial court issue (1) a peremptory writ of mandate to set aside and vacate the Board's decision and to order the OCERS parties to issue a new decision holding 6FE overtime pay must be included in Szewczyk's and Morikawa's compensation earnable and to provide them with all attendant back pay; and (2) a peremptory writ of mandate commanding the OCERS parties "to refrain from applying OCERS' new definition of 'normal working hours' after [Szewczyk's and Morikawa's] retirement in violation of article I, section 9 of the California Constitution."

The trial court granted the petitions, concluding: "Following [the Orange County Sheriff's Department]'s restructuring of the deputy [sheriff] II classification as it related to jail deputies in 2008, [Szewczyk and Morikawa] were treated as a separate grade or class from other deput[y] [sheriff] II['s] for purposes of the platoon schedule and 6FE overtime. The 6FE overtime was ordinarily included in the normal working hours for all deputies assigned to the jail. Therefore, [Szewczyk's and Morikawa's] compensation earnable must include the 6FE overtime under . . . section 31461 and the California Supreme Court's decision in *Alameda* [*County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032]."

The OCERS parties filed a motion for reconsideration of the trial court's October 14, 2024 order, which the court denied.

7

Judgment was entered in which the trial court ordered the issuance of a writ directing the OCERS parties to (1) include 6FE overtime, "which was earned by [Szewczyk and Morikawa] every two weeks during their final compensation period, in [Szewczyk's and Morikawa's] 'compensation earnable' within the meaning of . . . section 31461"; (2) "to adjust [Szewczyk's and Morikawa's] retirement allowances such that they are calculated based on the inclusion of [Szewczyk's and Morikawa's] 6FE compensation in their compensation earnable both prospectively . . . and retroactively to the dates of [Szewczyk's and Morikawa's] respective retirements with interest thereon"; and (3) "to set aside any previous administrative decisions inconsistent therewith."

The OCERS parties appealed.

## DISCUSSION

### I.

#### OVERVIEW OF APPLICABLE CERL PROVISIONS

"CERL governs the pension systems maintained by many of the state's counties. Each county system is administered by its own retirement board, which is tasked with implementing CERL's provisions. Under CERL, the amount of an employee's pension benefit is determined as a percentage of the 'compensation earnable' received by the employee during a representative year of county employment." (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees Retirement Assn., supra*, 9 Cal.5th at p. 1052 (*Alameda*).)

CERL defines the term "compensation" at section 31460 as "remuneration paid in cash . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member."

8

Section 31461, subdivision (a)(1) defines "'compensation earnable'" as the employee's "average compensation . . . for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay." Since 2000, CERL has excluded from compensation earnable "overtime premium pay *other than* premium pay for hours worked within the normally scheduled or regular working hours that are in excess of the statutory maximum workweek or work period applicable to the employee under Section 201 and following of Title 29 of the United States Code." (§ 31461.6, subd. (a), italics added; see *Alameda, supra*, 9 Cal.5th at pp. 1058, 1097, fn. 32 ["In other words, overtime pay is not excluded if it is earned by an employee as part of his or her 'normally scheduled or regular working hours'" and "[o]nly payment for excess hours, as compared to the employee's peers, is excluded"].)

Through Assembly Bill No. 340 (2011–2012 Reg. Sess.), which enacted the California Public Employees' Pension Reform Act of 2013 (Gov. Code, § 7522 et seq.), the Legislature amended section 31461 by adding subdivision (b) to expressly exclude from compensation earnable "any compensation determined by the local retirement board to have been paid to enhance a member's retirement benefit [citation] and any compensation for services rendered outside normal working hours." (*Alameda, supra*, 9 Cal.5th at p. 1060.) Such amendments also effected a limitation on the amount of vacation and sick leave and payments made at the termination of employment that can be included in compensation earnable. (*Ibid.*, citing section 31461, subd. (b)(2) & (4).) In making such amendments to section 31461, the Legislature sought to limit "pension spiking," that is "the manipulation of an employee's pattern of work and pay to produce inflated compensation earnable during the final compensation period." (*Alameda,*

9

*supra*, 9 Cal.5th at p. 1061; see *Ventura County Employees' Retirement Assn. v. Criminal Justice Attorneys Assn. of Ventura County* (July 27, 2026, S2839277) __ Cal.5th __ [2026 Cal. Lexis 3954].)

## II.

### THE TRIAL COURT DID NOT ERR BY CONCLUDING DEPUTY SHERIFF II'S WORKING IN JAIL OPERATIONS WERE NOT IN THE SAME "GRADE OR CLASS OF POSITION" AS DEPUTY SHERIFF II'S WORKING PATROL

In granting the petitions for writs of mandate, the trial court found that, following the Orange County Sheriff Department's 2008 reorganization effecting a restructure of the deputy sheriff II classification, deputy sheriff II's like Szewczyk and Morikawa who worked in jail operations did not belong to the "same grade or class of position" within the meaning of section 31461, subdivision (a) as other deputy sheriff II's who worked patrol. The OCERS parties challenge that finding.

Neither section 31461 nor any other CERL provision defines the term "grade or class of positions" for the purpose of determining compensation earnable. (*Stevenson v. Board of Retirement of Orange County Employees Retirement System, supra*, 186 Cal.App.4th at p. 509 (*Stevenson*).) Indeed, the California Supreme Court in *Alameda* observed: "CERL's definition of compensation earnable is both very general and somewhat inscrutable." (*Alameda, supra*, 9 Cal.5th at p. 1058.)

In *Alameda*, the Supreme Court concluded: "[T]o calculate compensation earnable, section 31461 uses a retiring employee's personal daily rate of pay, while it looks to the number of days 'ordinarily' worked *by comparable employees*—that is, 'persons in the same grade or class of positions during the period, and at the same [base] rate of pay' [citation] to determine the number of workdays over which that rate of pay is applied. As

10

a practical matter, a retiring employee's final compensation is the annual compensation the employee would have received had he or she worked the average number of days ordinarily worked by his or her peers during the final compensation period. To find final compensation, a county retirement board is presumably required to determine the employee's compensation during the final compensation period, divide that figure by the days worked by the employee in that time to determine his or her average daily rate of pay, and then multiply that rate by 'the average [annual] number of days ordinarily worked' [citation] by the employee's peers during the final compensation period." (*Alameda, supra*, 9 Cal.5th at p. 1058, italics added.)

Here, in its order granting the writ petitions, the trial court noted the following undisputed facts: (1) at all relevant times, both Szewczyk and Morikawa "were in the civil service classification of deputy sheriff II, assigned to the Theo Lacy Correctional Facility"; and (2) as of 2019, only 30 of the 630 employees classified as deputy sheriff II worked in jail operations and worked the platoon schedule with 6FE overtime.

In addition, following the 2008 reorganization of the Orange County Sheriff's Department, only deputy sheriff II's then working in jail operations were given the choice of working patrol or continuing to work in the jail. Deputy sheriff II's who wished to move from working in the jail to patrol were not automatically guaranteed that opportunity; rather they first had to pass training and meet other requirements before entering patrol, and if any such deputy sheriff II failed to pass such standards, they would be required to return to jail operations as a deputy sheriff I. Deputy sheriff I's who were promoted to the deputy sheriff II classification were required to leave jail operations and work patrol following the promotion. All deputies working jail operations, whether deputy sheriff I's or deputy sheriff II's

11

performed the same functions with the same level of responsibility and all deputies worked the same platoon schedule and concomitant 6FE overtime.

Needless to say, deputy sheriff II's working in jail operations and deputy sheriff II's working patrol had very different job duties, unit recruitment requirements, work locations, and schedules (deputy sheriff II's working patrol did not work the platoon schedule or 6FE overtime). Consequently, the record supports the trial court's finding in that it shows deputy sheriff II's in jail operations, such as Szewczyk and Morikawa, were not "comparable" to deputy sheriff II's working patrol. (*Alameda, supra*, 9 Cal.5th at p. 1058.) As such, deputy sheriff II's as a general group did not consist of "persons in the same grade or class of positions" within the meaning of section 31461, subdivision (a)(1).

The trial court's finding is consistent with an amendment to section 31461 that was not effective until after the order granting the writ petitions. Specifically, the Legislature amended section 31461 to add the following as new subdivision (a)(2)(A): "To the extent a retirement system has not defined 'grade,' it may define 'grade,' [for purposes of determining compensation earnable in subdivision (a)(1) of section 31461], to mean a number of employees considered together because they share similarities in job duties, schedules, unit recruitment requirements, work location, collective bargaining unit, or other logical work-related group or class. A single employee shall not constitute a group or class."[5] In its order dated October 14, 2024, granting the writ petitions, the court acknowledged that at that time,

---

[5] Subdivision (a)(2)(B) of section 31461 was also added to indicate in part: "Subparagraph [(a)(2)](A) shall not be operative in any county until the board of supervisors of that county, by resolution adopted by majority vote, makes that subparagraph applicable in the county."

12

the Legislature had approved these amendments to section 31461, as Assembly Bill No. 2284 (2023–2024 Reg. Sess.) had passed and been filed with the Secretary of State, but such amendments would not become effective until January 1, 2025.

In their opening brief, the OCERS parties rely on a December 20, 2022 resolution of the Orange County Board of Supervisors (Board of Supervisors) in support of their argument "the County has made clear that it does not consider 'custody deputy' as a grade" under section 31461, subdivision (a)(1). That resolution, however, does not refer to deputy sheriff II's, much less purport to reject the notion deputy sheriff II's working in jail operations constitute their own grade or class of positions within the meaning of section 31461, subdivision (a)(1).

What the resolution does show is that grades within the meaning of section 31461, subdivision (a)(1), had not previously been designated in any memorandum of understanding (MOU's) entered between the County and the Association of Orange County Sheriffs since at least 2013. The resolution stated that while such MOU's "have provided, among other things, for specific classes of employees, their regular work periods and certain elements of pay characterized as 'premium pay[,]' . . . including on-call pay and canine handler maintenance pay," the County and the Association of Orange County Sheriffs "were not required to designate officially any groups of employees, due to their different duties, responsibilities, and schedules, as being in different grades *for the purpose of calculating retirement benefits* as there was no reason to do so." (Italics added.) In the resolution, the Board of Supervisors expressly acknowledged the County and the Association of Orange County Sheriffs "have long recognized, *in practice*, differences in specialized units of employees in the same general class, based on differences

in specialized levels of responsibility, required skills and impact," but they "did not have business reasons to distinguish in their MOU's such different job responsibilities." (Italics added.)

Citing section 31461, subdivision (a)'s provision that an employee's compensation earnable be based on either the same grade or class of positions, the resolution proceeded to identify certain units of job assignments "as employees with different and distinct duties, responsibilities and schedules which . . . could be deemed a different 'grade,' even if the formal recognition of such distinctions was not required in the past." The enumerated list did not include any deputy sheriffs, but the resolution did not suggest that only the job assignments identified therein might constitute a different grade "from other employees in the same broader classifications that are more grounded in seniority and rank" for purposes of calculating compensation earnable under section 31461.[6] The resolution, therefore, only provided support for the trial court's determination the deputy sheriff II's working in jail operations are not part of the same grade as deputy sheriff II's working patrol notwithstanding the absence of any such reference in the effective MOU's.

## III.

THE 6FE OVERTIME PAY MUST BE INCLUDED IN COMPENSATION EARNABLE

Here, there does not appear to be any dispute that the half-hour of overtime required of deputy sheriff II's in the custodial setting pursuant to the platoon schedule constitutes, with respect to that specific group of deputy

---

[6] The resolution identified the following job assignments: homicide detail, hazard devices squad, statewide transportation, special victims detail, special weapons and tactics team, tactical support team, major accident reconstruction team, District Attorney special assignment unit and homicide unit, and canine handlers.

14

sheriffs, "premium pay for hours worked within the normally scheduled or regular working hours that are in excess of the statutory maximum workweek or work period applicable to the employee under Section 201 and following of Title 29 of the United States Code" within the meaning of section 31461.6, subdivision (a). Given the trial court's correct finding that deputy sheriff II's, like Szewczyk and Morikawa, who worked in the custodial setting, are in a grade separate from deputy sheriff II's who work on patrol as discussed *ante*, the court properly concluded the 6FE overtime must be included in calculating Szewczyk's and Morikawa's compensation earnable as premium pay for hours worked within the normally scheduled or regular working hours under section 31461.6.

IV.

*STEVENSON* IS DISTINGUISHABLE FROM THE INSTANT CASE

In their opening brief, the OCERS parties argue this court should reverse the judgment because the trial court erroneously "reject[ed]" the opinion issued by a panel of this court in *Stevenson, supra*,186 Cal.App.4th 498, which they contend "involv[ed] nearly identical arguments" as those presented by the OCERS parties in the instant case. For the reasons we explain, *Stevenson* is distinguishable.

*Stevenson, supra*, 186 Cal.App.4th 498 involved an Orange County Sheriff's Department deputy sheriff who in March 1998 was ultimately promoted the position of investigator with "the south narcotics bureau." (*Id.* at p. 502.) As a narcotics investigator, he was required to be "available to work overtime whenever it was necessary to complete an ongoing investigation" beyond his regular work schedule. (*Ibid.*) Stevenson testified he worked 20 hours or more of overtime each week until June 2001, when he was seriously injured and applied for disability retirement. (*Ibid.*)

15

After the Board concluded his overtime should be excluded from his compensation earnable, he filed a petition for writ of administrative mandate. Stevenson argued, inter alia, the Board erred by concluding it did not have authority "to determine that narcotics investigators were properly a grade or class of position" within the meaning of section 31461 and a consistent prior resolution issued by the Board, "such that they would be entitled to overtime as a part of their compensation earnable." (*Stevenson, supra*, 186 Cal.App.4th at p. 504.) The trial court denied the petition. (*Id.* at p. 505)

A panel of this court affirmed, holding the administrative record contained sufficient evidence Stevenson's grade or class within the meaning of section 31461 was that of investigator and not *narcotics* investigator. (*Stevenson, supra*, 186 Cal.App.4th at p. 501.) Consequently, the overtime he worked that was unique to narcotics investigators had been properly excluded from his compensation earnable. (*Ibid.*)

As pointed out by the trial court in its order, *Stevenson* is factually distinguishable from the instant case because the overtime at issue in *Stevenson* was not part of Stevenson's standard, required working hours for his position as narcotics investigator, but for hours in excess of his regular schedule "whenever it was necessary to complete an ongoing investigation." (*Stevenson, supra*, 186 Cal.App.4th at p. 502.) In contrast, the 6FE overtime at issue in the instant case is built into the regular work schedule of deputy sheriff II's working in jail operations rendering the pay received for that time "premium pay for hours worked *within the normally scheduled or regular working hours* that are in excess of the statutory maximum workweek or work period applicable to the employee." (§ 31461.6, subd. (a), italics added.)

In reviewing the evidence before it, the *Stevenson* court noted the memoranda of understanding in effect during the relevant time period only

16

"identified five 'classes' of positions within the peace officer unit: (1) deputy sheriff I; (2) deputy sheriff II; (3) deputy sheriff trainee; (4) investigator; and (5) investigator-polygraph operator." (*Stevenson, supra*, 186 Cal.App.4th at p. 510.) The court further noted the memoranda of understanding did not identify the narcotics investigator position as a separate class. (*Ibid*.) But as explained in the Board of Supervisors' December 20, 2022 resolution discussed *ante*, which did not exist when *Stevenson* was decided, the County's MOU's with the Association of Orange County Sheriffs did not designate grades or classes of positions for purposes of determining compensation earnable. Thus, that resolution confirms, the absence of such a designation in the MOU's is not probative of whether one exists.

In addition, in affirming the trial court's finding narcotics investigators did not constitute a separate grade or class of position, the *Stevenson* court observed Stevenson agreed the description of the investigator position posted on the County Web site accurately described his position of narcotics investigator as well. (*Stevenson, supra*, 186 Cal.App.4th at p. 510.) And the appellate court noted evidence of a "'Title Schematic'" that only listed class titles of "Investigator I" and "Investigator" and "their grades as P-06 and P-09." (*Ibid*.)

Nothing in *Stevenson*, however, suggests the classes or groups identified in a job description or in title schematics is dispositive with respect to the scope of grades or classes of positions under section 31461, subdivision (a)(1). As the *Stevenson* court's holding with respect to grade or class of positions was based entirely on the evidence before it, which in contrast to the instant case, did not include evidence showing significant differences between groups of employees with respect to job duties, schedules,

17

unit recruitment requirements, and work locations, its analysis with respect to grade or class of positions is not apt.

V.

THE TRIAL COURT DID NOT IGNORE THE "SAME RATE OF PAY" LANGUAGE OF SECTION 31461, SUBDIVISION (a)

In their opening brief, the OCERS parties argue in determining compensation earnable, "the comparative peer group defined as 'persons in the same grade or class of positions[,]' must also receive the same average compensation in order to satisfy . . . [section] 31461[, subdivision (a)]'s 'same rate of pay' statutory language." They argue that given evidence the pay scale for deputy sheriff II is generally higher than and thus different from the pay scale for a deputy sheriff I, the trial court erred because it ignored the "same rate of pay" language of section 31461, subdivision (a) when it "creat[ed] a 'custody deputy' grade or class based on a hybrid subgroup encompassing both deputy sheriff I's and deputy sheriff II's."

We first observe that in light of the platoon schedule and its concomitant 6FE overtime, deputy sheriff II's working in jail operations are arguably paid at a different rate of pay than deputy sheriff II's who work on patrol and do not work that schedule. In any event, the record does not establish the trial court concluded that deputy sheriff I's and deputy sheriff II's who work in the jails combine to form a single grade under section 31461, subdivision (a). Instead, in its order granting the writ petitions, the court found the OCERS parties' "decision to solely compare [Szewczyk and Morikawa] to others classified as deputy [sheriff] II for purposes of calculating their compensation earnable was . . . arbitrary and unsupported by evidence."

18

In its order, the trial court *acknowledged* Szewczyk and Morikawa's argument "they should be considered part of a grade/class consisting of 'custody deputies,' including deputies who worked in the jails facilities and were required to work the [half-hour of] overtime," given that post-2008 Orange County Sheriff's Department restructuring, the job duties of deputy sheriff II's in jail operations "essentially merged with those of" deputy sheriff I's. The court, however, did not expressly find the existence of such a grade or class of custody deputies.

Instead, the trial court found: "Following [the Orange County Sheriff's Department]'s restructuring of the deputy [sheriff] II classification as it related to jail deputies in 2008, [Szewczyk and Morikawa] were treated as a separate grade or class *from other deput*[*y*] [*sheriff II's*] for purposes of the platoon schedule and 6FE overtime," and "[t]he 6FE overtime was ordinarily included in the normal working hours for all deputies assigned to the jail." (Italics added.) On that basis, the court concluded, "[Szewczyk's and Morikawa's] compensation earnable must include the 6FE overtime under . . . section 31461 and the California Supreme Court's decision in *Alameda*." We discern no error in the trial court impliedly finding that, under the circumstances presented, deputy sheriff II's in jail operations constitute a grade or class of positions within the meaning of section 31461, subdivision (a)(1).

## VI.

### SUBSTANTIAL EVIDENCE

The OCERS parties also argue "substantial evidence requires reversal" because the "administrative record is replete with evidence for treating [Szewczyk's and Morikawa's] overtime as non-pensionable" and the trial court's ruling otherwise "lacks substantial evidence." We review a court's

19

ruling on a petition for writ of administrative mandate for substantial evidence. (*Stevenson, supra*, 186 Cal.App.4th at p. 508.) Whether substantial evidence might have supported a denial of Szewczyk and Morikawa's writ petitions is irrelevant. For the reasons we have explained, substantial evidence supports the trial court's findings underlying its order granting the writ petitions. We find no error.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.


MOTOIKE, P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

20